1
2
3
4
5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CHARLES CLARK,<br><br>                    Plaintiff,<br><br>        v.<br><br>FIDEL GUTIERREZ, et al.,<br><br>                    Defendants. | Case No. 1:21-cv-01386-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS GARZA, CAROLINA, ESPITIA, AGUILAR, OEHLERT, NIZTESCU, JANE DOE (A TTA), AND RIZK FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS; PLAINTIFF'S CALIFORNIA GOVERNMENT CODE § 845.6 CLAIM AGAINST DEFENDANTS GARZA, CAROLINA, ESPITIA, AGUILAR, OEHLERT, AND NIZTESCU; PLAINTIFF'S NEGLIGENCE CLAIM AGAINST DEFENDANTS SHIRLEY, WHITE, CRONJAGER, THOMAS, GUTIERREZ, DOE 1 (A CONTRACTOR SUPERVISOR), AND DOE 2 (A CONTRACTOR); AND PLAINTIFF'S MEDICAL NEGLIGENCE CLAIM AGAINST DEFENDANTS JANE DOE (A TTA) AND RIZK; AND THAT ALL OTHER CLAIMS BE DISMISSED<br><br>(ECF No. 13)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

1

Christopher Charles Clark ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983, which includes state law claims.  Plaintiff filed the complaint commencing this action on September 13, 2021. (ECF No. 1).

On February 16, 2022, the Court screened Plaintiff's complaint and found that only the following claim should proceed past screening: Plaintiff's Eighth Amendment claims against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, Niztescu, Jane Doe (a TTA), and Rizk for deliberate indifference to his serious medical needs.  (ECF No. 12).  The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Eighth Amendment claims against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, Niztescu, Jane Doe (a TTA), and Rizk for deliberate indifference to his serious medical needs; or c. Notify the Court in writing that he wants to stand on his complaint."  (Id. at 17-18).

On March 21, 2022, Plaintiff filed his First Amended Complaint.  (ECF No. 13). Plaintiff alleges that he tripped and fell, that he did not receive necessary medical care afterwards, and that grievance coordinators intentionally interfered with his right to file a grievance.

The Court has reviewed the First Amended Complaint, and for the reasons described below, will recommend that this action proceed on the following claims: Plaintiff's Eighth Amendment claims against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, Niztescu, Jane Doe (a TTA), and Rizk for deliberate indifference to his serious medical needs; Plaintiff's California Government Code § 845.6 claim against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, and Niztescu; Plaintiff's negligence claim against defendants Shirley, White, Cronjager, Thomas, Gutierrez, Doe 1 (a contractor supervisor), and Doe 2 (a contractor); and Plaintiff's medical negligence claim against defendants Jane Doe (a TTA) and Rizk.[1]  The

---

[1] Plaintiff is advised that the Doe defendants cannot be served until Plaintiff has identified them and filed a motion to substitute, or amended his complaint to substitute, named defendants in place of the Doe defendants. For service to be successful, the Court and/or the United States Marshal must be able to identify and locate the defendants to be served.  Plaintiff will be required to identify the Doe defendants as the litigation proceeds.  The

1    Court will also recommend that all other claims be dismissed.

2        Plaintiff has twenty-one days from the date of service of these findings and

3    recommendations to file his objections.

4    **I.      SCREENING REQUIREMENT**

5        The Court is required to screen complaints brought by prisoners seeking relief against a

6    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

7    The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

8    legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

9    that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

10   § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 11), the Court may

11   also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any

12   portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

13   determines that the action or appeal fails to state a claim upon which relief may be granted."

14   28 U.S.C. § 1915(e)(2)(B)(ii).

15       A complaint is required to contain "a short and plain statement of the claim showing

16   that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are

17   not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

18   conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

19   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient

20   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id.

21   (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting

22   this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts

23   "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d

24   677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a

25   plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

26       Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal

27   ─────────────────────────────────────────

28   Court notes that, once discovery opens, Plaintiff will be given the opportunity to seek information to identify the
     Doe defendants.

3

pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II.        SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges as follows:

On or about July 1, 2021, between the hours of 5-6:00 p.m., while returning from the evening meal, Plaintiff was walking near the A1 Yard gym and tripped over an abnormal arch in the blacktop pavement.  Plaintiff fell hard to the ground.

Defendant Carolina, a correctional officer, asked Plaintiff if he was ok.  Plaintiff said that he was not sure.  Other inmates helped Plaintiff to his feet.  Plaintiff was in pain but did not know the extent of his pain or injuries.  Correctional officers laughed.

As the evening passed, Plaintiff started feeling severe pain in his neck and shoulder, so he put in a request for medical assistance.

Plaintiff had always been aware of that particular section because it stands out and you cannot help but notice that the sidewalk needed repairs.  The sidewalk was riddled with several large cracks in the walkway, which would be a hazard for any mobility impaired or persons in wheelchairs.  Plaintiff filed a grievance form and complained of the hazardous sidewalk where inmates have to pass to and fro on a daily basis.  Defendant Carolina stated that he and others fell at that spot.

On or about July 7, 2021, the institution maintenance team repaired the area where Plaintiff fell.  Thereafter they repaired the rest of the spots that were a mobility hindrance.  This is not an incident in which Defendants can claim that they did not know that it was a hazardous situation, that repairs were not needed, or that injuries were not foreseeable.  Numerous other inmates and staff members tripped and/or fell over this particular spot.  Their actions to repair the affected areas is evidence that they had known the whole time of the risk of harm.  They simply failed to abate it.

For at least three to four years, this section where Plaintiff fell needed repairs.  The entire time the repairs were needed, there were no warning or caution signs placed anywhere. Nor does the place as a whole have Americans with Disabilities Act accommodation signs,

4

benches, or symbols.

The Warden, the Program Administrator, and the A Yard supervisors are all responsible for maintaining a safe environment, and the responsibility of maintenance of the institution lies with these employees and the contractors they hire to provide services. These officers knew of the need for such repairs, and even if they placed "work orders" for repairs and the work was not done, they had an obligation to ensure it was done in a timely manner. They knew the condition was a substantial risk to the health and safety of inmates and employees, yet put the repairs off for several years. These employees (including the Warden) walked past the affected areas on a daily basis. This includes the contractor for the repairs and any of his or her supervisors who knew of the need for the repairs. They all waited until someone injured himself and put them on notice of this suit. Only then were repairs promptly done.

On the same day that he fell, Plaintiff put in a "sick call slip" requesting medical assistance. He complained of pain in his neck. On July 2, 2021, he complained of pain in his neck (with headaches), hand tingling, and pain inside his left shoulder. This same day he told both defendant Carolina and defendant Garza that he was in pain and needed medical assistance. On more than three occasions he asked for medical assistance from these officers.

The CDCR 7362 form states, in relevant part, "if you believe this is an urgent/emergent health care need, contact the correctional officer on duty." Plaintiff clearly expressed his concerns that he believed it was an emergency situation. Moreover, over the weekend, Plaintiff sought pain medication from other inmates to relieve his pain, and he paid canteen items for that.

It should be noted that Plaintiff had surgery in the neck and shoulder where he currently has in place thirty-six three-and-a-half inch screws and two rods. He also has a cross plate in his neck. The surgery occurred on December 21, 2016. Plaintiff told the officers of this, but they failed to summon medical assistance. Other officers were advised, such as defendants Espitia, Aguilar, Oehlert, and Niztescu.

Plaintiff complained of pain and a need to see a doctor to all staff available from July 2, 2021, through July 6, 2021, with no assistance. They would only give him a sick call slip

5

1   (CDCR 7362 form).

2       On July 6, 2021, since Plaintiff's numerous requests for urgent care had been refused,

3   he went "man down" and refused to move.  He complained that his pain was "unbearable."  He

4   was finally placed in a wheelchair and escorted to an area they call "CTC" for medical

5   assistance.

6       On that same day, Plaintiff saw the "TTA."  They took x-rays.  However, they did not

7   give Plaintiff pain medication or any medication whatsoever.  On July 7, 2021, Plaintiff was

8   finally given "muscle relaxers" for his pain.  He was never given pain medication.  The muscle

9   relaxers gave little relief, so Plaintiff took them along with any pain medication he could buy

10  from other inmates.

11      On July 8, 2021, Plaintiff saw the doctor.  The doctor told Plaintiff he had strained his

12  neck and shoulder area, and that there were no broken bones.  However, Plaintiff complained

13  specifically that because of the pain between his neck and shoulder, he is also experiencing

14  headaches and back pain.  Plaintiff also explained that, on a scale from one to ten, the pain is a

15  ten.  Thus, Plaintiff's only relief has generally come from other inmates' pain medication that

16  he buys.  Plaintiff was not even given an over-the-counter pain medication by the TTA or the

17  Doctor.  They all treated Plaintiff as if he was faking his injuries, but he was not.

18      Dr. Rizk is Plaintiff's primary care provider.  He interviewed Plaintiff about his injuries

19  from the fall and prescribed the muscle relaxers.  He did not give Plaintiff any pain medication,

20  even though Plaintiff asked for it.  This is also attributed to Dr. Mells.  Neither doctor

21  prescribed Plaintiff pain medication, not even the TTA.  Plaintiff was ultimately given therapy.

22      From July 1, 2021, through August 5, 2021, Plaintiff filed approximately fourteen (or

23  more) 7362 forms complaining of pain and suffering.  Plaintiff never received pain medication.

24      Plaintiff brings his claim based on inadequate medical care because of the failure to

25  give medical assistance when Plaintiff complained of an urgent need, because of the failure to

26  prescribe pain medication and to instead contend that Plaintiff is "faking" his pain level,

27  because of the failure to provide adequate medical assistance, and because of the failure to

28  provide a professional diagnosis.

Plaintiff is an ongoing patient in the mental health system at the Correctional Clinical Case Management System ("CCCMS") level of care.  He has been a participant in the mental health system for more than four years (approximately).  As a result of the substantial games being played by both custody and staff, as well as medical, Plaintiff had to quit taking a medication that helped to keep him from having nightmares.  He stopped the medicine because he was taking other pain medications which overwhelmed his ability to think clearly.

Moreover, he repeatedly complained.  He had a detailed session with his psychologist regarding this incident and the unfair treatment he had to weather.  Plaintiff was laughed at, and told to "quit faking."  Additionally, because he repeatedly requested medical assistance, they became angry with him simply for requesting help.  They simply did not want to assist Plaintiff.  This is clearly conduct that impinges on Plaintiff's mental health.

Finally, Plaintiff alleges that grievance coordinators intentionally interfered with his right to file a grievance.  Plaintiff correctly filed the grievance as a "custody" grievance, but the coordinator artificially reasoned that it was a "health care" issue and redirected it to the healthcare appeals coordinator.  The healthcare coordinator received the grievance on or about July 7, 2021.  They held the grievance for about two months.  Thereafter they filed an order stating that they had no jurisdiction over the grievance, and that it was an issue for custody.  Plaintiff believes that they worked in concert to thwart Plaintiff's attempts to exhaust his claims by way of grievance.  The appeal was constructively frozen.  They did this so they can say Plaintiff failed to exhaust his claims.

Plaintiff alleges that he complied with California's Government Claims Act.

## III.     ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

7

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms.  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant

8

holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

## B.  Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc).  Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen,

9

642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation.  <u>Farmer</u>, 511 U.S. at 834.  "First, the deprivation alleged must be, objectively, sufficiently serious."  <u>Id.</u> (citation and internal quotation marks omitted).  Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference."  <u>Id.</u> (citations and internal quotation marks omitted).  Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety.  <u>Id.</u> at 837.  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2006).  Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  <u>Farmer</u>, 511 U.S. at 835; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff alleges that he tripped over an abnormal arch in the blacktop pavement.  Plaintiff further alleges that numerous defendants were aware of this condition but did nothing to resolve it.  However, Plaintiff does not sufficiently allege that that any defendant knew that the arch posed an excessive risk to Plaintiff's health or safety.  Plaintiff alleges that numerous other inmates and staff tripped and/or fell, but there are no allegations suggesting that any of them suffered an injury, let alone a serious injury.

Moreover, in an analogous type of case involving inmates who slipped and fell on slippery surfaces, Courts have found that inmates need to show exacerbating conditions:

> Under the Eighth Amendment, "slippery prison floors...do not state even an arguable claim for cruel and unusual punishment." <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993) (quotation omitted). Indeed, federal courts have repeatedly rejected Eighth Amendment slip and fall claims. See <u>Oubichon v. Carey</u>, 2017 WL 2162940, at *8 (E.D. Cal. May 17, 2017) (citing <u>Coleman v. Sweetin</u>, 745 F.3d 756, 764 & n.7 (5th Cir. 2014) (collecting cases); <u>Pyles v. Fahim</u>, 771 F.3d 403, 410 & n.25 (7th Cir. 2014) (collecting cases) ("Federal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement.") ); <u>see also</u> <u>Collier v. Garcia</u>, 2018 WL 659014, at *2 (N.D. Cal. Jan. 31, 2018) (dismissing § 1983 claim alleging prisoner slipped and fell in his

cell in a puddle of water from a leaking chase); <u>Aaronian v. Fresno Cty. Jail</u>, 2010 WL 5232969, at *2–*3 (E.D. Cal. 2010) (dismissing § 1983 claim that plumbing leak caused puddle, resulting in plaintiff's slip and fall, as not cognizable); <u>Gilman v. Woodford</u>, 2006 WL 1049739 (E.D. Cal. April 20, 2006) (granting qualified immunity to defendants when prisoner slipped and fell in puddle of water resulting from leaky roof known to defendants), <u>aff'd by</u> 2008 WL 686740 (9th Cir. March 12, 2008) (unpublished memorandum disposition). Therefore, in order state a cognizable claim for relief, there must be a confluence of exacerbating conditions such that the slippery floor posed a serious, unavoidable threat to plaintiff's safety. <u>See</u> <u>Frost v. Agnos</u>, 152 F.3d 1124, 1129 (9th Cir. 1998) ("[s]lippery floors without protective measures could create a sufficient danger to warrant relief" when an inmate alleges facts that exacerbate the danger resulting from such conditions; inmate using crutches had repeatedly fallen and injured himself on slippery shower floors); <u>Osolinski v. Kane</u>, 92 F.3d 934, 938 (9th Cir. 1996) (finding prisoner failed to plead any exacerbating conditions which rendered him unable to provide for his own safety).

Plaintiff's allegations that he sustained an injury from a slip and fall demonstrate negligence at most. Although provided with the legal standards, Plaintiff has not pled any conditions that rendered him unable to provide for his own safety, preventing him from avoiding puddles or rendering him unable to perceive the slippery conditions. <u>Osolinski</u>, 92 F.3d at 938; <u>Mancinas v. Brown</u>, 2018 WL 1109673, at *2 (E.D. Cal. Mar. 1, 2018) (dismissing prisoner's § 1983 claim that known, ongoing leak caused puddle, resulting in slip and fall).

<u>Coleman v. Frauenheim</u>, 2018 WL 2463855, at *3 (E.D. Cal. June 1, 2018) (alterations in original).

Here, Plaintiff fails to sufficiently allege there were any exacerbating conditions. Plaintiff alleges that he was aware of the allegedly dangerous section of sidewalk, and there are no allegations suggesting that he was not able to avoid or walk over the abnormal arch.[2]

Accordingly, Plaintiff fails to state an Eighth Amendment conditions of confinement claim based on the abnormal arch in the blacktop pavement.[3]

\\\

---

[2] Plaintiff does allege that the sidewalk posed a particular hazard for the mobility impaired and persons in wheelchairs, but Plaintiff does not allege that he is either.

[3] The Court notes that Plaintiff states that he is bringing this claim pursuant to the Eighth Amendment "and its California Counterparts." (ECF No. 13, p. 4). However, while Plaintiff specifically identifies certain state laws he is suing under, he does not identify any provision of the California Constitution. Moreover, Plaintiff does not differentiate between the "California counterparts" and his Eighth Amendment conditions of confinement claim, and as discussed above, Plaintiff fails to state an Eighth Amendment conditions of confinement claim.

**C.  Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent."  Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a

"plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that defendant Carolina saw him fall on July 1, 2021. The next day, Plaintiff told defendant Garza and defendant Carolina that he was in pain and needed medical assistance. On more than three occasions he asked for medical assistance from these officers. Moreover, Plaintiff had surgery in the neck and shoulder where he currently has in place thirty-six three-and-a-half inch screws and two rods. He also has a cross plate in his neck. The surgery occurred on December 21, 2016. Plaintiff told this to defendants Garza and defendant Carolina, as well as defendants Espitia, Aguilar, Oehlert, and Niztescu.[4] Plaintiff also complained of pain and a need to see a doctor. However, they would only give Plaintiff a sick call slip.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff sufficiently alleges that defendants Garza, Carolina, Espitia, Aguilar, Oehlert, and Niztescu were aware that Plaintiff had a serious medical need, yet disregarded that need. Accordingly, the Court finds that Plaintiff's Eighth Amendment claim against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, and Niztescu for deliberate indifference to his serious medical needs should proceed past screening.

Plaintiff also alleges that medical personnel failed to properly treat him. According to Plaintiff, on July 6, 2021, after he went "man down" and complained of "unbearable" pain, he saw an unnamed "TTA" (defendant Jane Doe). Defendant Jane Doe took x-rays, but did not give Plaintiff pain medication or any medications whatsoever. On July 8, 2021, Plaintiff saw \\\

---

[4] Plaintiff also alleges that he told "all staff available" from July 2, 2021, through July 6, 2021, and that they did not provide assistance. (ECF No. 13, p. 6). However, Plaintiff does not identify any other officers, either by name or as Doe defendants. It is also not clear if Plaintiff is attempting to sue any unidentified officers based on this claim. The Court previously informed Plaintiff that if he "does not know the names of certain officers involved in the incident, he may describe them to the best of his ability and name them as 'Doe Defendants,' such as 'Doe Defendant 1, an older male correctional officer working on July 3, 2021,' to be identified by name and substituted in as a party with the help of discovery during the litigation." (ECF No. 12, p. 13 n.4). As Plaintiff did not cure this defect, despite being given the opportunity, the Court will recommend that this claim be allowed to proceed only against the named defendants.

the doctor.[5]  The doctor told Plaintiff he had strained his neck and shoulder area, and that there were no broken bones.  However, Plaintiff complained specifically that because of the pain between his neck and shoulder, he is also experiencing headaches and back pain.  He also explained that, on a scale from one to ten, the pain is a ten.  However, Dr. Rizk only provided muscle relaxers.  He did not give Plaintiff any pain medication, even though Plaintiff asked for it.  Plaintiff also alleges that this is attributed to Dr. Mells.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's Eighth Amendment claim against defendants Jane Doe (a TTA) and Rizk for deliberate indifference to his serious medical needs should proceed past screening.

As to defendant Mells, Plaintiff's only allegation is that Dr. Rizk's failure to provide pain medication is also attributed to defendant Mells.  There are no allegations suggesting that defendant Mells knew Plaintiff had a serious medical need yet disregarded that need.  There are also no allegations suggesting that any other defendant knew that Plaintiff had a serious medical need yet disregarded that need.

Therefore, Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to his serious medical needs against any other defendant.

Accordingly, based on the foregoing, the Court finds that Plaintiff's Eighth Amendment claims against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, Niztescu, Jane Doe (a TTA), and Rizk for deliberate indifference to his serious medical needs should proceed past screening.  The Court also finds that the claim should be dismissed as to all other defendants.

### D.  Federal Claim for Mental and Emotional Injury

Plaintiff brings a separate claim for mental and emotional injuries under "federal law."[6]  However, Plaintiff does not state what federal law he is bringing this claim under, and the Court is not aware of any federal law that allows a separate cause of action for mental and emotional injury in this situation.

---

[5] It is not clear, but based on additional allegations, it appears that the doctor Plaintiff saw was defendant Rizk, his primary care provider.
[6] Plaintiff also brings this claim under state law.  The Court addresses Plaintiff's state law claims below.

Accordingly, the Court finds that Plaintiff fails to state a separate federal claim for mental and emotional injuries.  However, the Court is not in any way limiting the damages Plaintiff may have for his other claims.

### E.  Processing of Appeals/Grievances

In Plaintiff's fifth claim, Plaintiff complains about his appeals not being properly processed.  Plaintiff states that he is bringing claims under both the First Amendment and the Fourteenth Amendment.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

As Plaintiff does not have a liberty interest in the processing of his grievance, Plaintiff fails to state a Fourteenth Amendment due process claim based on his allegations that his grievance was not properly processed.

To the extent Plaintiff is bringing a claim for interference with his right to access the courts, that claim also fails.  Under the First and Fourteenth Amendments to the Constitution, state inmates have a "'fundamental constitutional right of access to the courts.'"  Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith, 430 U.S. 817 (1977)); Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007), overruled on other grounds by Hust v. Phillips, 555 U.S. 1150 (2009).  To have standing to bring this claim, Plaintiff must demonstrate that he suffered an actual injury.  Lewis, 518 U.S. at 351-52; Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994).  This means Plaintiff must allege that he was prejudiced with respect to

contemplated or existing litigation, such as the inability to meet a filing deadline or present a nonfrivolous claim.  Lewis, 518 U.S. at 348-49.  To succeed, Plaintiff must have been denied the necessary tools to litigate a nonfrivolous criminal appeal, habeas petition, or civil rights action.  Lewis, 518 U.S. at 353-55 & n.3; Christopher v. Harbury, 536 U.S. 403, 415 (2002).

Here, Plaintiff does not sufficiently allege that he suffered an actual injury.  Plaintiff was able to file this lawsuit.  And, to the extent this case proceeds and any defendant argues that Plaintiff failed to exhaust available administrative remedies, Plaintiff will have an opportunity to submit evidence and make arguments regarding the issue of exhaustion.

Finally, the Court notes that in his First Amended Complaint, Plaintiff alleges that the Court did not address his First Amendment claim in its first screening order.  However, Plaintiff does not specify what First Amendment claim he is attempting to bring.  Moreover, the Court did address the claim Plaintiff appeared to be bringing.  Plaintiff appeared to (and still does) allege that grievance coordinators failed to process his appeal so that they could say that Plaintiff failed to exhaust his administrative remedies.  Thus, it appears that Plaintiff is bringing an access to courts claim, and as discussed above and in the prior screening order (ECF No. 12, pgs. 14-15), the grievance coordinators have not unconstitutionally interfered with Plaintiff's access to courts.  To the extent Plaintiff is attempting to bring a First Amendment retaliation claim,[7] there are no allegations suggesting that anyone took an adverse action against Plaintiff because he engaged in protected conduct.

Accordingly, Plaintiff fails to state any claim based on his allegations that his grievance was not properly processed.

### F.  State Law Claims

#### 1.  California Government Code § 815.4

"A public entity is liable for injury proximately caused by a tortious act or omission of

---

[7] There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person.  Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act or omission been that of an employee of the public entity."  Cal. Gov't Code § 815.4.

Plaintiff does not bring a claim against a public entity.  Instead, Plaintiff brings this claim against two contractors, as well as their supervisor.  However, Plaintiff alleges that the contractors are employees, and that they walked past the abnormal arch on a daily basis.  (ECF No. 13, p. 8).  Thus, based on Plaintiff's allegations, the contractors and their supervisor are state employees and not independent contractors subject to this section.  Finally, even if they are independent contractors and not employees, there are no allegations suggesting that they were responsible for the abnormal arch, or that they were hired to fix the problem yet failed to do so.

Accordingly, Plaintiff fails to state a claim under California Government Code § 815.4.

### 2.  California Government Code § 845.6

California Government Code § 845.6 provides:

> "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.  Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6."

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care."  Jett, 439 F.3d at 1099.  "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care."  Id.

(quoting Watson v. State, 21 Cal.App.4th 836, 26 Cal.Rptr.2d 262, 265 (Ct. App. 1993)).
"[T]he term 'immediate medical care' as used in the statute includes both diagnosis and
treatment."  Id.

As discussed above, liberally construing the allegations in Plaintiff's complaint, the
Court finds that Plaintiff sufficiently alleges that defendants Garza, Carolina, Espitia, Aguilar,
Oehlert, and Niztescu were aware that Plaintiff had a serious medical need, yet failed to
summon medical care.  However, Plaintiff fails to sufficiently allege that any other defendant
failed to summon medical care that they knew or had reason to know that he needed.[8]

Accordingly, the Court finds that Plaintiff's California Government Code § 845.6 claim
should proceed against only defendants Garza, Carolina, Espitia, Aguilar, Oehlert, and
Niztescu.

### 3.   California Government Code § 844.6

This section appears to provide immunity to public entities in certain situations.  See,
e.g., Towery v. State of California, 14 Cal.App.5th 226, as modified (Aug. 14, 2017); Lawson
v. Superior Court, 180 Cal.App.4th 1372, 1388 (2010).  There is no indication in this section
that it creates a cause of action.  Thus, Plaintiff fails to state a claim under this section.

### 4.   Negligent and Intentional Infliction of Emotional Distress

"The elements of intentional infliction of emotional distress are: (1) extreme and
outrageous conduct by the defendants with the intention of causing, or reckless disregard of the
probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme
emotional distress; and (3) actual and proximate causation of the emotional distress by the
defendant's outrageous conduct."  Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1179-80
(E.D. Cal. 2008) (citing Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993) &

---

[8] "Once a practitioner has been summoned to examine and treat a prisoner, he or she is under a duty to exercise that degree of diligence, care, and skill such as is ordinarily possessed by other members of the profession.  Failure to do so is malpractice.  (Burns v. American Casualty Co., 127 Cal.App.2d 198, 203, 127 Cal.Rptr. 198.)  Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist is a breach of such duty and as such is also medical malpractice and clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care."  Nelson v. State of California, 139 Cal.App.3d 72, 81 (Ct. App. 1982).

Delfino v. Agilent Technologies, Inc., 145 Cal.App.4th 790, 808 (2006)).  Extreme and outrageous conduct is that which is "so extreme as to exceed all bounds of that usually tolerated in a civilized community," Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982), and "of a nature which is *especially calculated to cause*, and does cause, mental distress of a very serious kind." Christensen v. Superior Ct., 54 Cal.3d 868, 905 (1991) (emphasis in original) (citation and internal quotation marks omitted).  "The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result."  Id. at 903. (citation and internal quotation mark omitted).  "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  Hughes v. Pair, 46 Cal.4th 1035, 1051 (2009) (citations and internal quotation marks omitted).

"Negligent infliction of emotional distress is not an independent tort in California, but is regarded simply as the tort of negligence."  Klein v. Children's Hosp. Med. Ctr., 46 Cal.App.4th 889, 894 (1996).  "The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care."  Brown v. Ransweiler, 171 Cal.App.4th 516, 534 (2009) (citing Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996)).  "[T]o recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'"  Wong v. Jing, 189 Cal. App.4th 1354, 1377 (2010) (citing Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 927-30 (1980)).

"Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."  Potter, 6 Cal.4th at 1004 (alteration in original) (citations and internal quotation marks omitted).[9]

In claim three, Plaintiff brings a claim based on "mental and emotional injury" under

---

[9] There is "no material distinction" between "serious emotional distress" and "severe emotional distress." Wong, 189 Cal. App.4th at 1378.

state law.  Plaintiff alleges that he is a mental health patient, and that he quit taking a medication that he took to help him from having nightmares.  He also alleges that he had a detailed session with a psychologist, that he was laughed at, that he was told to "quit faking," and that "they" became angry with Plaintiff for seeking help.  However, there are no allegations suggesting that Plaintiff suffered "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."  Potter, 6 Cal.4th at 1004 (alteration in original) (citations and internal quotation marks omitted).  Accordingly, whether Plaintiff is bringing a claim for intentional infliction of emotional distress or negligent infliction of emotional distress, his claim fails because he fails to allege severe emotional distress.

### 5.  Negligence

"The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages."  Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th 680, 687 (2018) (citing Artiglio v. Corning Inc., 18 Cal. 4th 604, 614 (1998).

In Claim four, Plaintiff appears to bring a negligence claim against defendants Shirley (the Warden), White (it is not clear, but Plaintiff appears to allege that White is an Assistant Warden), Cronjager (it is not clear, but Plaintiff appears to allege that Cronjager is an assistant Warden), Thomas (a sergeant), Gutierrez (a contractor), Doe 1 (a contractor supervisor), and Doe 2 (a contractor).  Plaintiff alleges that it is the responsibility of these defendants to provide services such as construction/maintenance.  Plaintiff also alleges that these defendants walked past the affected area on a daily basis, but they did not fix it until after someone was injured.  Finally, Plaintiff alleges that their failure to fix the arch led to Plaintiff falling hard and getting injured.

Liberally construing Plaintiff's complaint, Plaintiff sufficiently alleges that these defendants knew about the allegedly unsafe pavement, had a duty to fix (or contract with someone to fix) the affected area, failed to fix the affected area, and that Plaintiff was injured as a result.  Accordingly, the Court finds that Plaintiff's negligence claim against defendants Shirley, White, Cronjager, Thomas, Gutierrez, Doe 1, and Doe 2 should proceed past screening.

6.     Medical Negligence

To state a claim for medical negligence or malpractice under California law, Plaintiff must establish "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Sampson v. Ukiah Valley Med. Ctr., No. 15-CV-00160-WHO, 2017 WL 2834001, at *3 (N.D. Cal., June 30, 2017) (quoting Machado v. Cal. Dep't of Corrs. and Rehab., 12-cv-6501-JSC, 2013 WL 5800380, at *5 (N.D. Cal., Oct. 28, 2013)).

As discussed above, Plaintiff sufficiently alleges a claim for deliberate indifference to his serious medical needs against defendants Jane Doe (a TTA) and Rizk based on allegations that these defendants failed to properly treat him.  For the same reasons, the Court finds that Plaintiff's medical negligence claim against defendants Jane Doe (a TTA) and Rizk should proceed past screening as well.

However, as to defendant Mells, Plaintiff's only allegation is that Dr. Rizk's failure to provide pain medication is also attributed to defendant Mells.  There are no allegations suggesting that defendant Mells owed a duty to Plaintiff, or that defendant Mells breached that duty.  There are also no allegations suggesting that defendant Mells was defendant Rizk's supervisor.

Accordingly, the Court will recommend that Plaintiff's medical negligence claim proceed only against defendants Jane Doe (a TTA) and Rizk.

**IV.     CONCLUSION, RECOMMENDATIONS, AND ORDER**

The Court has screened the First Amended Complaint and finds that the following claims should proceed past screening: Plaintiff's Eighth Amendment claims against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, Niztescu, Jane Doe (a TTA), and Rizk for deliberate indifference to his serious medical needs; Plaintiff's California Government Code § 845.6 claim against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, and Niztescu; Plaintiff's negligence claim against defendants Shirley, White, Cronjager, Thomas, Gutierrez, Doe 1 (a

contractor supervisor), and Doe 2 (a contractor); and Plaintiff's medical negligence claim against defendants Jane Doe (a TTA) and Rizk.  The Court also finds that all other claims should be dismissed.

The Court will not recommend that further leave to amend be granted.  In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order.  While Plaintiff cured one of the deficiencies identified by the Court, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This case proceed on Plaintiff's Eighth Amendment claims against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, Niztescu, Jane Doe (a TTA), and Rizk for deliberate indifference to his serious medical needs; Plaintiff's California Government Code § 845.6 claim against defendants Garza, Carolina, Espitia, Aguilar, Oehlert, and Niztescu; Plaintiff's negligence claim against defendants Shirley, White, Cronjager, Thomas, Gutierrez, Doe 1 (a contractor supervisor), and Doe 2 (a contractor); and Plaintiff's medical negligence claim against defendants Jane Doe (a TTA) and Rizk; and

2. All other claims be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

\\\

1        Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district

2  judge to this case.

3

4  IT IS SO ORDERED.

5        Dated:   **June 2, 2022**                        /s/ Erica P. Grosjean

6                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28